## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

LAMAR CHAMBERS, et al.,                    :

      Plaintiffs,                         :        Case No.  3:13cv00279

vs.                                         :        District Judge Walter Herbert Rice
                                                     Chief Magistrate Judge Sharon L. Ovington
WEST CARROLLTON POLICE              :
DEPARTMENT,
                                            :
      Defendant.                          :

                                            :

## REPORT AND RECOMMENDATIONS[1]

### I.  Introduction

      Plaintiff Lamar Chambers brings this case pro se claiming that Defendant West Carrollton Police Department violated his constitutional rights in connection with the execution of a search at his home in August 2011.  Chambers asserts, in part, that the officers lacked probable cause and a valid search warrant to enter his home.  He names one Defendant: West Carrollton Police Department.  He names his daughter Nathalie Chambers as a Plaintiff, although she did not sign the Complaint, and it is unclear whether she is a minor.  The Complaint seeks compensatory and punitive damages "in a fair settlement of $10,000.00."  (Doc. #2, PageID at 19).

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendations.

The case is presently pending upon Defendant's Motion for Summary Judgment (Doc. #9), Chambers' Motion to Deny Summary Judgment (Doc. #11), Defendant's Reply (Doc. #12), and the record as a whole.

Defendant contends that the applicable two-year statute of limitations bars Chambers' Complaint, and the West Carrollton Police Department is not *sui juris*. Plaintiff counters that his Compliant was "filed in a timely fashion," and "the police department can be sued."  (Doc. #11, PageID at 63).

## II.     Factual Background

### A.     Chambers' Complaint

Chambers alleges in his Complaint that Detective Bell of the West Carrollton Police Department knowingly, or with reckless disregard, made false statements in the application he submitted to obtain a search warrant for Chambers' home.  According to the Complaint, the search – "a controlled raid (sting) ..." – took place on August 21, 2011.[2]  (Doc. #2, PageID at 16).  Chambers filed his Complaint, and thus initiated this case, on August 21, 2013.

Chambers asserts, "West Carrollton detectives and SWAT team gain[ed] entrance to my home by delivering a fake box of drugs to my home, by having a fellow officer pose as a DHL delivery [person]."  *Id*.  When the officer asked Nathalie Chambers to sign

---

[2] The search-warrant affidavit attached to Defendant's Motion for Summary Judgment was not submitted by Detective Bell but was submitted by another Detective of the West Carrollton Police Department.  (Doc. #9, Exhibit 1A).

for the package, she asked him to leave it outside.  Instead, the officer insisted on placing the package inside the door to Chambers' home.  Chambers alleges, "Approximately ten seconds later detectives and officers (SWAT) armed with guns and assault rifles stormed the premises, not once did they show my daughter a search warrant before they threw her to the ground and cuffed her and began searching my home." *Id*.  According to Chambers, "Approximately thirty min[utes] later a search warrant appeared.  I finally had a chance to talk with Detective Bell, however they interrogated my daughter while in cuffs, she had no panties or bra on it took a lady officer over thirty minutes to appear on the premises."  (Doc. #2, PageID at 16).

Chambers further alleges, "The detective (Bell) along with the deputies present continued to keep my daughter in cuffs while being interrogated[.]  [T]hey later stated that if she could give them any information pertainning [sic] to her father (Lamar Chambers) they would un-cuff her ...." *Id*, PageID at 18.

Chambers explains that he was told (he does not say by whom, probably Detective Bell) that the package contained a controlled substance – 52 pounds of Khat.[3]  Detective Bell purportedly accused Chambers of being a Khat dealer, and "deputies made rude

---

[3]  "Khat (pronounced 'cot') is a stimulant drug derived from a shrub (Catha edulis) that is native to East Africa and southern Arabia.  The khat plant itself is not scheduled under the Controlled Substances Act; however, because one of the mind-altering chemicals found in it, cathinone, is a Schedule I drug (a controlled substance with no recognized therapeutic use), the Federal Government considers Khat use illegal." National Institute on Drug Abuse, http://www.drugabuse.gov (search for "khat"); *see Al-Najar v. Mukasey*, 515 F.3d 708, 711 n.1 (6th Cir. 2008) ("Khat ... contains ... cathine, a Schedule IV controlled substance under Ohio and federal law." [brackets omitted]).

comments and implied that [he] was selling Khat." (Doc. #2, PageID at 17). Chambers states that the officers did not find any Khat in his home. Accepting this as true means that Chambers was not charged with a crime related to Khat. The documents in the present record of this case do not indicate whether or not any criminal charges were brought against Chambers.

Chambers investigated the incident by contacting DHL "who stated that they had no delivery coming to [his] home that day." *Id*. He also purportedly learned that his "name was not on the package." *Id*.

Chambers was told by someone (he does not say by whom) that he had been under surveillance for months. He states, "I know of no basis for conducting such surveillance ... nor do I believe such surveillance would have produced any facts supporting the issuance of a search warrant." (Doc. #2, PageID at 17).

Chambers asserts that he contacted Homeland Security because Detective Bell had "used their name in the affidavit to obtain [the] unlawful search [warrant]." *Id*. Chambers allegedly learned from Homeland Security that "they had not released 52 lbs. of Khat to W. Carrollton Police Department. So he [presumably, Detective Bell] had no clue ... what was in the box ...." *Id*.

Chambers states, "My daughter and I w[ere] shocked and frightened when deputies armed with assault rifles and wearing bulletproof vest[s] pounded on the door of our home around 8:30 a.m. on the day in question." *Id*. Chambers lastly alleges, "West

4

Carrollton Police Department tore through my home like a tornado even breaking my bedroom furniture ...." (Doc. #2, PageID at 18).

### B.    Detective Bell's Summary-Judgment Affidavit

In support of its Motion for Summary, Defendant West Carrollton Police Department has attached the sworn affidavit of Detective Robert Bell. Detective Bell states that on August 10 and 12, 2011, the Immigration, Custom Enforcement branch of the Department of Homeland Security informed Defendant about Khat it had found in an intercepted package addressed to "Mr. Frank" at "1014 Lookout Trail, Apt. B, West Carrollton." (Doc. #9, Exhibit 1, PageID at 43). This is the exact address where the search occurred that Chambers is challenging in the present case. (Doc. #2, PageID at 16).

Detective Bell continues, "It was determined that Mr. Lamar Chambers was the resident at this address[,] and it was believed that he was involved in an illegal operation that included the receipt of this illicit substance." (Doc. #9, PageID at 43). On August 16, 2011, Detective Bell applied for, and obtained, a search warrant for Chambers' apartment at 1014B Lookout Trail in West Carrollton. (Doc. #9, Exhs. 1A, 1B).

Detective Bell states in his affidavit:

6.    On August 17, 2011, I delivered the package to 1014 Lookout Trail, Apt. B, West Carollton, Ohio while disguised as a courier. The package was accepted by Ms. Nathalie Chambers who signed the "Delivery Manifest" as "Frank" (See, "Delivery Manifest," attached hereto as Exhibit 1F).

7.      The search warrant was executed on August 17, 2011 .... (See "Inventory and Receipt," attached hereto as Exhibit 1C and "Return," attached hereto as Exhibit 1D).

(Doc. #9, PageID at 44).  Detective Bell concludes his affidavit as follows:

8.      After executing the search warrant..., Ms. Nathalie Chambers was interrogated by the involved officers.  She signed a pre-interview form on this same date and agreed to speak with the officers.  (See, "Pre-Interview Form," attached hereto as Exhibit 1G.)

9.      Mr. Lamar Chambers contacted the West Carrollton Police Department on August 17, 2011 to discuss the search of his residence at 1014 Lookout Trail, Apt. B, West Carrollton, Ohio.

(Doc. #9, PageID at 44).


III.    **Summary Judgment Standards**

A party is entitled to summary judgment if there is no genuine dispute over any material fact and if the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Barker v. Goodrich*, 649 F.3d 428, 432 (6th Cir. 2011).

To resolve whether a genuine issue of material fact exists, the Court draws all reasonable inferences in the light most favorable to the non-moving party.  *Richland Bookmart, Inc. v. Knox County, Tenn.*,  555 F.3d 512, 520 (6th Cir. 2009) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).  With these reasonable inferences in the forefront, "[t]he central issue is 'whether the evidence presents a sufficient disagreement to require

6

submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Jones v. Potter*, 488 F.3d 397, 402-03 (6th Cir. 2007) (quoting, in part, *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 251-52 (1986) and citing *Matsushita Elec.*, 475 U.S. at 587). "Accordingly, '[e]ntry of summary judgment is appropriate 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Whitfield v. Tennessee*, 639 F.3d 253, 258 (6th Cir. 2011) (citations omitted).

## IV.   Discussion

Section 1983 of Title 42, United States Code, establishes "'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271, 114 S.Ct. 807, 811 (1994) (quoting *Baker v. McCollan,* 443 U.S. 137, 144 n. 3, 99 S.Ct. 2689 (1979); *see Moldowan v. City of Warren*, 578 F.3d 351, 376 (6th Cir. 2009). The rights Chambers seeks to vindicate arise under the Fourth Amendment to the United States Constitution, which provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

By incorporation through the Fourteenth Amendment, the Fourth Amendment's probable-cause requirement applies to searches and seizures conducted by police officers

and detectives acting under the color state law. *See* 42 U.S.C. §1983; *see also McDonald v. City of Chicago, Ill.*, __U.S.__, 130 S.Ct. 3020, 3035 (2010); *Stricker v. Twp. of Cambridge*, 710 F.3d 350, 358 (6th Cir. 2013); *O'Brien v. City of Grand Rapids*, 23 F.3d 990, 996 (6th Cir. 1994).

Defendant maintains that it is entitled to summary judgment because §1983's two-year statute of limitations bars Chambers' claims. Based on the affidavit of Detective Bell, Defendant asserts that on August 17, 2011, Chambers spoke with its officers about the search of his home. Defendant therefore reasons that Chambers either knew about the search on August 17, 2011 or he should have known about the search on August 17, 2011 by exercising reasonable diligence.

In his Motion to Deny Summary Judgment, Chambers reiterates many of the allegations he raised in his Complaint. He further alleges, in part, that he was in the hospital at the "time of the controlled sting so therefore had no clue that his bedroom furniture had been tossed and broken by the West Carrollton Police Department." (Doc. #11, PageID at 63). He also explains that he was discharged from the hospital on August 21, 2011. *Id*.

A case raising a §1983 claim in Ohio must be filed within two years after the date the §1983 claim accrued. *Browning v. Pendleton*, 869 F.2d 989, 992 (6th Cir. 1989) (en banc); *see DeBois v. Pickoff*, 3:09CV230, 2011 WL 1233665 at *4 (S.D. Ohio Mar. 28, 2011) (Rice, D.J.). When, then, did Chambers' Fourth Amendment claims accrue?

8

A §1983 claim accrues and "the limitations period starts to run 'when the plaintiff knows or has reason to know of the injury which is the basis of his action.'" *Kuhnle Bros., Inc. v. Cnty. of Geauga*, 103 F.3d 516, 520 (6th Cir. 1997) (quoting *Sevier v. Turner*, 742 F.2d 262, 272 (6th Cir. 1984); *see Trzebuckowski v. City of Cleveland*, 319 F.3d 853, 856 (6th Cir. 2003)); *see also DeBois*, 3:09CV230, 2011 WL 1233665 at *4. "In determining when the cause of action accrues in section 1983 actions, we have looked to what event should have alerted the typical lay person to protect his or her rights." *Kuhnle Bros.,* 103 F.3d at 520 (quoting *Dixon v. Anderson*, 928 F.2d 212, 215 (6th Cir. 1991)) (other citation omitted).

Beginning with the evidence of record regarding the date Chambers knew or should have known about the search of the home, Defendant has come forward with evidence establishing that the search of Plaintiff's home occurred on August 17, 2011. Detective Bell's affidavit and the Exhibits attached to it reveal that an Ohio judge issued the search warrant on August 16, 2011; the search was executed and the warrant was returned on August 17, 2011; the package was signed for under the name "Frank" on August 17, 2011; and Nathalie Chambers signed the Pre-Interview Form on August 17, 2011. (Doc. #9, Exhs. 1B-D, 1F, 1G). Detective Bell states in his affidavit that Chambers contacted Defendant on August 17, 2011 "to discuss the search of his residence ...." *Id*., Exh. 1, ¶9. Given this evidence, Defendant has met its burden on summary judgment to produce evidence that, if credited by a jury, shows two facts: (1)

9

the search of Chambers' home occurred on August 17, 2011; (2) Chambers contacted Defendant on August 17, 2011 to discuss the search and, therefore, knew then that Defendant's officers had searched his home.  Because Defendant has met its burden of production at the summary-judgment stage, Chambers must present affirmative evidence showing "specific facts that reveal a genuine issue for trial." *Laster v. City of Kalamazoo*, ___ F.3d___, ___, 2014 WL 960892 at *8 (6th Cir. Mar. 13, 2014) (citing *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548); *see Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).  Chambers "may not 'rely on the hope that the trier of fact will disbelieve [Defendant's] denial of a disputed fact' but must make an affirmative showing with proper evidence in order to defeat the motion." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009) (quoting, in part*, Street*, 886 F.2d at 1479).  Although Chambers alleges in his Complaint that the search occurred on August 21, 2011, this by itself does not create a genuine issue of material fact over the date the search actually occurred.  To oppose "a proper summary judgment motion...," the nonmoving party must present evidence beyond "the mere pleadings themselves ...." *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548; *see Street*, 886 F.2d at 1479.  Chambers presents no affirmative evidence in support of his allegation or any evidence that casts genuine doubt upon the fact that the search occurred on August 17, 2011, as Defendant's evidence shows.  As a result, a reasonable jury could only find that the search occurred on August 17, 2011 and could not find that the search occurred on August 21, 2011.

10

Assuming that Chambers' daughter Nathalie Chambers is a proper Plaintiff in this case, the record contains no dispute over several facts about what occurred on August 17, 2011: (1) She signed for the package; (2) she was present during the search; and (3) she signed the Pre-Interview Form.  (Doc. #9, Exhs. 1 at ¶6; 1F, 1G).  Consequently, to be timely, she needed to file her constitutional challenge to the search under §1983 within two years of August 17, 2011, but she did not.  The Complaint was filed more than two years later, on August 21, 2013.  Her claims are therefore time barred.

Returning to Plaintiff Lamar Chambers, his opposition to Defendant's Motion for Summary Judgment does not re-allege that the search occurred on August 21, 2011.  He also does not state, or offer any evidence indicating, that he lacked knowledge on August 17, 2011 that Defendant's officers had searched his home.  Further, he does not present affirmative evidence challenging Detective Bell's sworn statement that Chambers contacted Defendant on August 17, 2011 to discuss the search of his home.  He instead emphasizes in his opposition to Defendant's Motion that he was in the hospital "at the time of the controlled sting ..." and was not discharged from the hospital until August 21, 2011.  (Doc. #11, PageID at 63).  He further states, "It wasn't until he [sic] was discharged from the hospital on Aug[ust] 21, 2011 that he [sic] knew how much humiliation and psychological damage this incident had on my daughter and I...." *Id*.

Accepting as true Chamber's assertion that he was not discharged from the hospital until August 21, 2011, this does not alter the fact – in Detective Bell's affidavit –

11

that Chambers contacted Defendant on August 17, 2011 to discuss the search of his residence.  Thus, even if he did not leave the hospital until August 21, 2011, Detective Bell's unrefuted affidavit and the Exhibits attached thereto, could lead a reasonable jury to but one conclusion: Chambers knew on August 17, 2011 about the search of his residence.

The fact, moreover, that Chambers may not have learned the <u>extent</u> of the alleged harm until four days later (when he was released from the hospital) does not cast doubt on the fact that on August 17, 2011, he knew about the search.  And, given his knowledge on that date, he also either knew or should have known about the existence of his injuries.  In other words, on August 17, 2011, Chambers had the type of information that "should have alerted the typical lay person to protect his or her rights."  *Kuhnle Bros.*, 103 F.3d at 520.

In sum, both Chambers and his daughter knew, or should have known, on August 17, 2011 about the search of Chambers' home and their resulting alleged injuries.  They therefore had two years from that date to file the present case.  Because they did not file this case until August 21, 2013, their Complaint is time barred.

Accordingly, Defendant's Motion for Summary Judgment is well taken.[4]

---

[4]  The untimeliness of the Complaint is, by itself, enough to grant Defendant's Motion. Defendant is also correct that it is not *sui juris* – i.e., it is not an entity capable of being sued.  *See Hale v. Vance*, 267 F. Supp.2d 725, 737 (S.D. Ohio 2003) (Rice, D.J.) (and cases cited therein).

## IT IS THEREFORE RECOMMENDED THAT:

1.    Defendant's Motion for Summary Judgment (Doc. #9) be GRANTED; and

2.    The case be terminated on the docket of this Court.


April 21, 2014

                                          s/Sharon L. Ovington
                                          Sharon L. Ovington
                                   Chief United States Magistrate Judge

13

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947, 949-50 (6th Cir. 1981).

14